IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,

Plaintiff,

vs.

GREG WILLIAM FANTER,

Defendant.

8:8-CR-473

MEMORANDUM AND ORDER ON
MOTION FOR TORT CLAIM

## I.    INTRODUCTION

This matter is before the Court on Greg William Fanter's Motion for Tort Claim. Filing 283. The Motion, which Fanter filed *pro se*, states that Fanter is filing "a notice of a Federal Tort Claim" on several individuals involved in his federal and state criminal cases. Filing 283 at 1.

Although this filing is not a model of clarity, it is the Court's burden to construe a document filed by a *pro se* litigant liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Archuleta v. Hedrick*, 365 F.3d 644, 648 (8th Cir. 2004) ("Pro se habeas petitions should be liberally construed."). Based on the information provided in Fanter's filing, it appears that Fanter is attacking the lawfulness of his imprisonment resulting from the revocation of his supervised release in this case, Filing 283 at 1–3, 5–6, as well as his imprisonment in a related state criminal case, Filing 283 at 4–5, 8.[1] Fanter also seems to be attempting to allege a civil action related to his medical treatment while he has been incarcerated. Filing 283 at 6–7, 10. Thus, this filing appears to contain a habeas petition under 28 U.S.C. § 2255 attacking the legality of his federal sentence for violating the conditions of his supervised release; a habeas petition under 28 U.S.C. § 2254

---

[1] Although Mr. Fanter lists various people in the caption of his filing, it is clear he is objecting to decisions made and actions taken in court proceedings, which do not constitute a claim against many of those listed in the caption by Mr. Fanter.

challenging the legality of his incarceration in the state criminal case; and a complaint brought under 42 U.S.C. § 1983 related to his medical treatment while incarcerated.

To untangle this matter, the Court does the following: First, the Court will dismiss the portion of Fanter's filing challenging his state confinement under 28 U.S.C. § 2254 for purported violations of the Fourth Amendment without prejudice. Under the rules governing habeas proceedings, separate petitions must be filed to challenge criminal judgements from different courts. *See* Rule 2(e) of the Rules Governing Section 2254 Proceedings ("A petitioner who seeks relief form judgments of more than one state court must file a separate petition covering the judgment or judgments of each court."); Rule 2(d) of the Rules Governing Section 2255 Proceedings ("A moving party who seeks relief from more than one judgment must file a separate motion covering each judgment."). The Court further notes that relief under § 2254 would be unavailable anyway because Fanter fails to show that he has exhausted his state-court remedies. *See* 28 U.S.C. § 2254(b)(1)(A) (stating that the habeas petition from a person in state custody shall not be granted unless "the applicant has exhausted the remedies available in the courts of the State"); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court.").

Second, because Fanter cannot assert a conditions-of-confinement claim through a habeas petition, the Court will order Fanter to provide notice if he wishes the portion of his filing related to his medical treatment to be severed from this case and filed as a separate civil action pursuant to 42 U.S.C. § 1983. *See Spencer v. Haynes*, 774 F.3d 467, 471 (8th Cir. 2014) (holding that the district court must obtain the consent of the *pro se* litigant before converting his or her claims from a habeas proceeding to a *Bivens* action); *Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996) ("If the prisoner is not challenging the validity of his conviction or the length of his detention, such

as loss of good time, then a writ of habeas corpus is not the proper remedy."). This notice should only state if Fanter consents or does not consent to the Court severing his medical treatment claims from this case and filing them in a separate civil action. This notice is due twenty-eight (28) days from the date of this order. If Fanter fails to provide notice, the Court will dismiss Fanter's medical treatment claim without prejudice.

Last, the Court will address the portion of Fanter's filing related to the legality of his federal sentence in this order as a 28 U.S.C. § 2255 habeas petition. Fanter contends that his federal sentence is unlawful because it violates the Double Jeopardy Clause of the United States Constitution, the Court did not allow him to represent himself, and the Court sentenced him in the revocation hearing without him present. Filing 283 at 4–5. For the reasons stated below, this petition is denied.

## II.   BACKGROUND

Given the complexity in this case, the Court finds it appropriate to provide some background. On December 17, 2018, the United States charged Fanter and two other defendants with (1) conspiracy to manufacture methamphetamine and (2) possession of Pseudoephedrine, a list I chemical, with the intent to manufacture methamphetamine. Filing 1 at 1–2. According to Fanter's Presentence Investigation Report, which the Court adopted without change, Fanter purchased pseudoephedrine at several pharmacies, then he and his co-defendants used it to manufacture methamphetamine. Filing 470 at 5–6. Fanter pleaded guilty to Count I of the Indictment on April 14, 2011, Filing 152 (Text Minute Entry), and the United States agreed to dismiss Count II in a plea agreement with Fanter. Filing 158 at 1. On July 18, 2011, Judge Laurie Smith Camp sentenced Fanter to a term of 151 months incarceration, followed by a five-year term of supervised release. Filing 168 (Text Minute Entry). Judge Smith Camp later reduced Fanter's

sentence to 130 months pursuant to 18 U.S.C. § 3582(c)(2). Filing 184. After Judge Smith Camp's passing, this case was reassigned to the undersigned judge. Filing 221 (Text Minute Entry).

On August 16, 2017, Fanter was released from prison and began serving his term of supervised release. Filing 208 at 1. Based on Fanter's current Motion, it appears that his grievances began with the filing of a Petition for a Warrant against him for violating the terms of his supervised release on November 13, 2019. According to the Petition, Fanter was pulled over for a traffic stop by the Nebraska state patrol, during which law enforcement uncovered a short shotgun and narcotics equipment in his possession. Filing 208 at 2. This violated two conditions of Fanter's supervised release: to not commit another federal, state, or local crime and to not possess a firearm, destructive device, or any other dangerous weapon. Filing 208 at 2.

The Court appointed the Federal Public Defender to represent Fanter for the supervised release revocation proceeding, Filing 210, and Federal Public Defender David R. Stickman was assigned to Fanter's case. Filing 218. During his initial appearance before Magistrate Judge Bazis on November 13, 2020, Fanter claimed that Mr. Stickman had a conflict of interest and could not represent him. Filing 228 (audio file). Judge Bazis determined that there was no conflict of interest. Filing 228 (audio file). On November 20, 2020, Fanter filed a hand-written document, which the Court construed as a motion to appoint new counsel, outlining various complaints against Mr. Stickman and the probation officer assigned to his case.[2] Filing 232 at 1–4. Before Judge Bazis could adjudicate that motion, however, the Government moved to dismiss the petition on November 24, 2020, under Federal Rule of Criminal Procedure 48(a). Filing 234. That same day, Judge Bazis denied the Motion to appoint new counsel as moot given the Government's Motion

---

[2] Although Fanter complained about being "forced" to have an attorney, he never asked to represent himself in this filing. Filing 232 at 1–4. Fanter also did not request to represent himself at the initial appearance. Filing 228 (audio file).

to Dismiss. Filing 235 (Text Minute Entry). The Court later granted the Motion and dismissed the Petition. Filing 237.

On April 14, 2021, a Petition for Offender Under Supervision was filed against Fanter, which alleged the same conduct as the earlier Petition. Filing 249. The Court again appointed the Federal Public Defender David Stickman to represent Fanter. Filing 261. Judge Bazis held an initial appearance on the Petition on April 29, 2021. Filing 259 (Text Minute Entry). Fanter did not make any complaints against Mr. Stickman at this hearing. Filing 263 (audio file).

The Court scheduled a hearing for disposition of the supervised release violation for June 3, 2021. Filing 268 (Text Minute Entry). During that hearing, Mr. Stickman stated that Fanter wanted to continue the hearing while he pursued an appeal on the underlying state-court conviction. Fanter did not make any complaints against Mr. Stickman at this hearing. The Court granted the continuance and continued the hearing to September 23, 2021. Filing 268 (Text Minute Entry). On September 20, 2021, based upon information received from the U.S. Marshal, the Court continued the hearing to November 17, 2021. Filing 270 (Text Minute Entry). The hearing was continued again to February 3, 2022. Filing 271 (Text Minute Entry); Filing 272 (Text Minute Entry).

According to Fanter's current Motion, on September 13, 2021, he sent a "motion" to the Court "[t]o Dismiss Public [D]efender David Stickman." Filing 283 at 2. Based on the Court's internal records, it does appear that the Clerk of the Court received correspondence from Fanter on September 13, 2021, titled, among other things, "Asking to Enter my Case as Pro_ [sic] Se." Based on the Court's usual practice, and General Rule 1.3(i) of the Court's local rules,[3] this document, if received, was most likely forward to Mr. Stickman because he was Fanter's attorney.

---

[3] General Rule 1.3(i) requires all submitted documents and communications with the Court to be submitted through an attorney and states that the Court may forward *pro se* documents to the sending party's attorney.

At the February 2, 2022, hearing, Fanter did not appear. Filing 272 (Text Minute Entry). Deputy United States Marshal Chris White testified about Fanter's absence. Deputy White explained that deputies with the U.S. Marshal's Office went to the Nebraska State Penitentiary, where Fanter was serving his state sentence, to retrieve Fanter. At the penitentiary, Fanter repeatedly refused to attend the hearing, despite deputies explaining that the hearing was his opportunity to voice his concerns to the undersigned. Fanter told deputies that his state court conviction, which was relevant to his supervised release revocation, was on appeal and that the supervised release revocation proceedings would be "moot" if his state-court conviction was overturned on appeal.[4] Deputy White further testified that it is the U.S. Marshal's policy not to use physical force to retrieve a noncompliant defendant unless ordered to do so by the Court.

The Court asked Mr. Stickman if he had any information he wanted to provide, and Mr. Stickman explained that he had spoken to Fanter about the hearing, that Fanter expressed displeasure with Mr. Stickman representing him, and that Fanter stated he did not want to attend. The Court expressed its belief that Fanter had waived his right to be present at the hearing, but the Court decided that giving Fanter another opportunity to appear was appropriate. The Court further stated that it would allow Fanter to appear by video if he preferred. However, if Fanter refused to appear again, the Court said that it intended to hold the hearing without him present.

The Court's intention was to order the U.S. Marshal's deputies to retrieve Fanter for the additional hearing even if the deputies had to secure Fanter's attendance using force. Prior to traveling to the state prison to retrieve Fanter for the hearing, the U.S. Marshal's Office consulted with the Court and expressed a concern that Fanter, the U.S. Marshal's deputies, or both, would be injured if they followed through with dragging Fanter out of his cell and transporting him to the

---

[4] There is no indication in the record that Fanter filed an appeal in his state-court case.

hearing at the Federal Courthouse in Omaha. Based on this information, the Court told the U.S. Marshal's deputies at a meeting that the Court wished for Fanter to be present, but if Fanter became combative with U.S. Marshal's deputies, the deputies could once again leave Fanter in his cell if they believed someone would be injured if Fanter was physically forced to leave his cell and travel to court.

On March 3, 2022, the Court held the rescheduled supervised release revocation hearing. Filing 274 (Text Minute Entry). Fanter again refused to appear. Mr. Stickman informed the Court that he had sent a letter prior to the hearing about the Court's position should Fanter not appear. Deputy White also spoke during the hearing about attempting to retrieve Fanter for his hearing. Deputy White explained that Fanter said he would not attend his hearing, either by video or in person. Fanter was aggressive, charging at the door, and told the U.S. Marshal's deputies that he would fight them if they tried to bring him to the hearing. Deputy White further testified that the deputies informed Fanter that the hearing could be held without him. The deputies decided to leave Fanter at the penitentiary.

The Court determined that Fanter's behavior, his refusals to attend his supervised release revocation hearing, and the cut-and-dried nature of his violation meant that Fanter had waived his right to be present. The Court further found that there was not a sufficient reason to continue the hearing given that Fanter had already been convicted in state court for the conduct underlying the revocation of his supervised release and the Court had already continued the hearing several times. The Court received evidence from the Government related to Fanter's state-court conviction, found that Fanter had violated the conditions of his supervised release, and imposed a disposition of 60 months of incarceration to run consecutive to Fanter's state-court term of imprisonment with 12

months of supervised release to follow. At the end of the hearing, the Court directed Mr. Stickman to provide a notice to Fanter of his right to appeal.

According to Fanter's current Motion, he filed another "motion" with the Court to "Show the courts my rights [t]o inter [sic] me as Pro-se [sic]." Filing 283 at 2. The Clerk of the Court did receive a document from Fanter titled "Motion to Show my Rights," although this document was received on February 17, 2022, so it is unclear if it is the document Fanter is referring to in his current Motion. The document does state that Fanter wished to proceed *pro se*.

Fanter never filed an appeal for his revocation of supervised release. On November 14, 2022, Fanter filed the current Motion, which states that he is giving "notice of a Federal Tort Claim." Filing 283 at 1.

### III.   ANALYSIS

The Court will only address the portion of Fanter's filing related to the legality of his federal sentence in this order, which the Court construes to be a petition under 28 U.S.C. § 2255.[5] From what the Court can glean from this document, Fanter contends that his federal sentence is unlawful because it violates the Double Jeopardy Clause of the United States Constitution, the Court did not allow him to represent himself, and the Court sentenced him in the revocation hearing without him present. Filing 283 at 4–5.

28 U.S.C. § 2255 provides that a prisoner in federal custody may move the sentencing court to set aside or correct a sentence by showing that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a). "Section 2255 was intended to afford federal

---

[5] The Court explained in the Introduction why the Court will not address at this time the claims the Court construes to be made pursuant to § 2254 and § 1983.

8

prisoners a remedy identical in scope to federal habeas corpus." *Odie v. United States*, 42 F.4th 940, 944 (8th Cir. 2022) (internal quotation marks omitted) (quoting *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011)). Relief under § 2255 is limited, as it "does not encompass all claimed errors in conviction and sentencing." *Meirovitz v. United States*, 688 F.3d 369, 370 (8th Cir. 2012) (quoting *Sun Bear*, 644 F.3d at 704).

       1. *Procedural Default*

       An important consideration for the Court in ruling on Fanter's petition is the fact that he never filed a direct appeal after the Court revoked his supervised release. Although Fanter was not present at his supervised release revocation hearing, the Court directed his counsel to provide him with notice of his right to appeal, and Fanter acknowledges being informed by his counsel of what occurred at the hearing. "Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." *Jennings v. United States*, 696 F.3d 759, 763 (8th Cir. 2012) (quoting *Bousley v. United States*, 523 U.S. 614 (1998)). "Thus, a petitioner may not raise an issue before the district court for the first time in a § 2255 motion if the issue was not presented on direct appeal from the conviction." *Id.* The only ways to circumvent a failure to present an issue on direct appeal are to demonstrate both "cause" and "prejudice" or to show that the petitioner is "actually innocent." *Jones v. United States*, 39 F.4th 523, 525 (8th Cir. 2022) (quoting *Bousley*, 523 U.S. at 622).

       In this case, the issues that Fanter is raising in his current petition—double jeopardy, self-representation, and holding the hearing *in absentia*—could have been presented on direct appeal. *See Cristin v. Brennan*, 281 F.3d 404, 409–10 (3d Cir. 2002) (holding that habeas petitioners procedurally defaulted claim that holding trial *in absentia* with references at trial to the petitioners' ethnic heritage violated their constitutional rights by not raising the issues on appeal in state court);

*Posa v. United States*, No. 16-16447-B, 2017 WL 8800980, at \*3 (11th Cir. Oct. 12, 2017) (unpublished) (holding that habeas petitioner procedurally defaulted claim that he was denied his right to self-representation by failing to raise the claim on direct appeal); *United States v. Castaneda*, No. CIV. 07-5070, 2007 WL 3094377, at \*5 (W.D. Ark. Oct. 19, 2007) (finding that the habeas petitioner procedurally defaulted double jeopardy claim); *United States v. Taylor*, No. 3-97-CR-0254-P, 1999 WL 592662, at \*4 (N.D. Tex. Aug. 6, 1999) (finding that the habeas petitioner procedurally defaulted his claim that the sentencing court improperly sentenced him *in absentia*). By failing to raise his claims on direct appeal, Fanter is barred from pursuing these issues in a habeas proceeding unless he can show cause and prejudice or actual innocence.

Fanter fails to show cause for his default. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him . . . ." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (emphasis omitted). This "ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim." *Murray v. Carrier*, 477 U.S. 478, 492 (1986).

Nothing prevented Fanter from filing an appeal raising the issues he now claims in his habeas petition. He acknowledges that his defense counsel—who the Court directed to give notice to Fanter about Fanter's right to appeal—informed him of what occurred at the supervised release revocation hearing. Fanter had ample time and opportunity in which to file an appeal. He now provides the Court with no reason why he failed to do so. Indeed, Fanter clearly understands the appellate process, as he repeatedly brought up his attempts to appeal his state-court conviction during the supervised-release proceedings. Because Fanter fails to show cause, the Court need not determine whether he can show prejudice. *See McCleskey v. Zant*, 499 U.S. 467, 502 (1991). Furthermore, given the cut-and-dried nature of Fanter's violation of the conditions of his

supervised release, the Court concludes that Fanter fails to show that he is actually innocent. *See United States v. Goodon*, 742 F.3d 373, 376 (8th Cir. 2014) (stating that "a certified copy of a state court judgment of conviction is sufficient to establish the commission of a state crime during a period of supervised release"). Accordingly, Fanter has procedurally defaulted the claims in his petition and is barred from pursuing them in a § 2255 habeas proceeding.

### 2. *On the Merits*

Fanter's procedural default notwithstanding, the Court also concludes that Fanter's claims based upon the Double Jeopardy Clause and holding his supervised release hearing without him present would fail on the merits.[6]

Fanter claims that the dismissal of the original Petition for an Offender Under Supervision means that the filing of a new Petition against him with the same allegations as the original violated his rights under the Double Jeopardy Clause. Filing 238 at 2. To the contrary, the Court granted the Government leave to dismiss the original Petition under Federal Rule of Criminal Procedure 48(a). "The authorities are replete that a [Rule 48(a)] dismissal is without prejudice." *United States v. B. G. G.*, 53 F.4th 1353, 1363 (11th Cir. 2022) (quoting *United States v. Davis*, 487 F.2d 112 (5th Cir. 1973)). Indeed, the reason Rule 48(a) requires leave of court is because a Rule 48(a) dismissal is without prejudice. *See id.* Therefore, the filing of the new Petition with the same factual allegations did not violate the Double Jeopardy Clause.

The Court also concludes that holding Fanter's supervised release revocation hearing without him present was lawful. Federal Rule of Criminal Procedure 32.1(b)(2)(C) entitles a defendant to "an opportunity to appear" at a supervised release revocation hearing. Fed. R. Crim.

---

[6] There are some disputed facts over whether Fanter did invoke his right to self-representation in the supervised release proceeding, so the Court does not analyze that claim further. Nevertheless, as outlined above, he has procedurally defaulted the claims made in his habeas petition, including his claim that his right to self-representation was violated.

P. 32.1(b)(2)(C). The right to appear at a supervised release revocation hearing, like other rights outlined under Federal Rule of Criminal Procedure 32.1(b)(2), may be waived. *See United States v. Jones*, 770 F.3d 710, 712–13 (8th Cir. 2014) (explaining that a defendant may waive the right to receive written notice of an alleged violation before a supervised release revocation hearing, to cross-examine witnesses, and to present mitigating information). "[W]aiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Harrison*, 393 F.3d 805, 806 (8th Cir. 2005) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). A waiver must be "knowing and voluntary" in the supervised release revocation context. *Jones*, 770 F.3d at 712. The Court looks to the "totality of circumstances" when evaluating the existence of a waiver. *Id.*; *see also United States v. Allen*, 788 F.3d 61, 74 (2d Cir. 2015) (stating that waiver can be "implied from the defendant's conduct") (quoting *United States v. Nichols*, 56 F.3d 403, 416 (2d Cir. 1995))).

Examining the totality of circumstances here leads the Court to conclude that Fanter waived his right to be present at the supervised release revocation hearing. Fanter understood that he had a right to be present, as he attended the hearing on June 3, 2021; he was informed by U.S. Marshal's deputies on February 2, 2022, that they were going to transport him to the supervised release revocation hearing where he could voice his concerns to the undersigned; and he had received a letter from his defense counsel explaining that the Court intended to proceed without him present if he refused to appear at his March 3, 2022, hearing. Instead of complying, Fanter refused to allow the U.S. Marshal's deputies to transport him and threatened them with physical harm if they attempted to retrieve him from his cell. Clearly, ordering the U.S. Marshal's deputies to drag Fanter from his cell and bring him to his hearing risked injury to both Fanter and the deputies. Fanter's knowledge and his behavior in response to that knowledge showed that he waived his right to be

12

present. *See United States v. Howell*, 24 F.4th 1138, 1143 (7th Cir. 2022) (noting that the "waiver provision in [Federal] Rule [of Criminal Procedure] 43(c)(1)(B) gives a court the flexibility to proceed with sentencing when a defendant . . . adamantly refuses to be transported peacefully to the sentencing hearing"); *United States v. Velazquez*, 772 F.3d 788, 799–800 (7th Cir. 2014) (holding that a defendant waived his right to be present at sentencing after he was warned that the court would proceed without him and the defendant declined to accompany the deputy marshal, especially given the context of the defendant's "long-standing and well-documented aversion to appearing voluntarily in court"); *United States v. Bradford*, 237 F.3d 1306, 1311–12 (11th Cir. 2001) (holding that a defendant waived her right to be present at trial when a deputy marshal indicated that the defendant understood the possible consequences of failing to appear, defendant's counsel stated that he had spoken with the defendant about the trial, and the defendant refused to leave her cell). Therefore, on the merits, Fanter's absence at the revocation hearing was not unlawful.

## IV.   CONCLUSION

Fanter has defaulted his 28 U.S.C. § 2255 habeas claims and, even if they were not defaulted, his claims based on the Double Jeopardy Clause and holding the supervised release revocation hearing in his absence are without merit. The Court also denies Fanter's Motion to the extent it is a habeas petition under 28 U.S.C. § 2254 because Fanter cannot attack multiple criminal judgments in one habeas petition. Finally, Fanter has twenty-eight (28) days from the date of this Order to inform the Court if he would like to file a 42 U.S.C. § 1983 action related to his medical treatment while incarcerated. If Fanter fails to respond, the Court will dismiss the remainder of Fanter's Motion without prejudice.

Dated this 30th day of January, 2023.

BY THE COURT:

Brian C. Buescher
United States District Judge